**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| CONAIR LLC, | ) | |
| | ) | |
| Plaintiff, | ) | CIVIL ACTION NO. |
| | ) | |
| v. | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| YIWU KEMEI ELECTRIC APPLIANCE CO., LTD. and YIWU CAITONG ELECTRIC CO., LTD. | ) ) ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |

**COMPLAINT**

Plaintiff, Conair LLC ("Conair" or "Plaintiff"), for its Complaint for Patent Infringement against, Yiwu Kemei Electric Appliance Co., Ltd. ("Kemei"), Yiwu Caitong Electric Co., Ltd. ("ATVOXIS"), (collectively "Defendants"), states as follows:

**SUMMARY OF THE PATENT INFRINGEMENT CLAIMS**

1. This is a patent infringement lawsuit pertaining to an invention for adjustable zero gap blade trimmers of United States Patent No. 11,104,017 ("the '017 Patent") (attached Exhibit A).

2. The technology involved in this case relates to hair trimmers, including a hair trimming system with a blade adjustment mechanism for adjusting the relative gap between a stationary blade and a movable blade to "zero" the gap between the blades.

1

3.     Prior to the current invention, trimmers typically included a blade assembly having a stationary blade and a reciprocating blade.  Several deficiencies were inherent in conventional clipper designs. For example, adjusting the length of cut between the cutting blade and stationary blade, sometimes referred to as "gap," required the physical removal of the blade assembly from the handle, and then aligning the relative positions of the blades, followed by reattachment of the blades to the handle. The operation often proved difficult.

4.     The '017 Patent transformed the way a barber may "zero gap" a blade while it is still attached.

5.     This claim for patent infringement against Defendants involves the unauthorized infringement of U.S. Patent No. 11,104,017. Defendants are manufacturing, importing, selling, and offering to sell Zero Gap Products that infringe upon the '017 Patent.

6.     Kemei sells zero gap products such as the KEMEI KM-2299 Professional Hair/Beard Trimmer, the Baldheaded Hair Clippers for Men Professional Cordless Hair Trimmer Beard Trimmer with T Blade Zero Gapped Rechargeable Grooming Kit and the KM-2210 products, all having a "Zero Gap T-Blade" feature. ("the Kemei Zero Gap Products").

7.     The Kemei Zero Gap Products are covered by at least one claim of the '017 Patent as evidenced by the fact the Kemei Zero Gap Products are identical to the drawings of the '017 Patent:

 

2

8.     Yiwu Caitong Electric Co., Ltd. sells zero gap products such as the ATVOXIS Professional Hair/Beard Trimmer and the Baldheaded Hair Clippers for Men Professional Cordless Hair Trimmer Beard Trimmer with T Blade Zero Gapped Rechargeable Grooming Kit, both having a "Zero Gap T-Blade" feature. ("the ATVOXIS Zero Gap Products").

9.     The ATVOXIS Zero Gap Products are covered by at least one claim of the '017 Patent as evidenced by the fact the ATVOXIS Zero Gap Products are identical to the drawings of the patent:



## THE PARTIES

10.    Conair LLC is a limited liability company under Delaware law with its principal place of business at 1 Cummings Point Road, Stamford, CT 06902.

11.    Conair is a leading international designer, manufacturer, and innovator of branded personal care and small kitchen appliances, cookware, hairbrushes and accessories, cosmetic bags, and travel accessories.

12.    Conair sells trimmer products including products sold under the "BaByliss" brand name that are covered by the claims of the '017 Patent in the United States, including in this judicial district.

13.     Yiwu Kemei Electric Appliance Co., Ltd. ("Kemei") is a company incorporated in the People's Republic of China with a place of business located at No.1377-1, Yinhai International Business Center, Chouzhou Road, Yiwu City, Zhejiang Province, China.

14.     Kemei has a website in the United States that promotes and advertises the Kemei Zero Gap Products in this judicial district: www.kemei.net.  The link directs the user to the array of Kemei Zero Gap Products subject to this Complaint on the website in the United States, and this judicial district.

15.     Yiwu Caitong Electric Co., Ltd. ("ATVOXIS") is a company incorporated in the Peoples Republic of China located at Choujiang Street, Yiwu City Room1602, Unit 1, Bldg 11, Yangcun 5 Dist Jinhua, Zhejiang China 321000.

16.     ATVOXIS advertises and sells products on Amazon.com in the United States that promote and advertise the ATVOXIS Zero Gap Products in this judicial district: https://www.amazon.com/ATVOXIS-Trimmer-Trimmers-Barbers-Clippers. The link directs the user to the array of ATVOXIS Zero Gap Products subject to this Complaint on the website in the United States, and this judicial district.

## JURISDICTION AND VENUE

17.     Conair's claim for patent infringement against Kemei and ATVOXIS arises under the patent laws of the United States, including 35 U.S.C. §§ 271 and 281.  This Court has original subject matter jurisdiction over this action under 28 U.S.C. §§ 1331 and 1338.

18.     Kemei is conducting business and infringing the '017 Patent in this district and elsewhere in the United States.

4

19.     Kemei is a foreign company residing at No.1377-1, Yinhai International Business Center, Chouzhou Road, Yiwu City, Zhejiang Province, China.

20.     Kemei imports, sells and offers for sale consumer series of trimmers that feature a "Zero Gap T-Blade" in the United States.  Kemei imports and sells such Kemei Zero Gap Products as the KEMEI KM-2299 Professional Hair/Beard Trimmer and the KM-2210 products having the "Zero Gap T-Blade" feature of the '017 Patent in this judicial district.

21.     Additionally, this Court has personal jurisdiction over Kemei since Kemei has availed itself of the privilege of conducting activities within the state of Illinois and has contacts with the state of Illinois sufficient to give rise to, or are related to, the claim of infringement through the sale and advertisement of the Kemei Zero Gap Products in this judicial district.

22.     Kemei imports, sells and offers for sale the Kemei Zero Gap Products in this judicial district.  Kemei is subject to personal jurisdiction of this Court because, among other things, it has established sufficient contacts with Illinois and within this judicial district.

23.     Kemei has committed acts of patent infringement within Illinois giving rise to this action. Kemei has sufficient contact with the forum meeting or exceeding the minimum threshold such that the exercise of jurisdiction over it would not offend traditional notions of fair play and substantial justice.

24.     ATVOXIS is conducting business and infringing the '017 Patent in this district and elsewhere in the United States.

25.     ATVOXIS is a foreign company located at Choujiang Street, Yiwu City Room1602, Unit 1, Bldg 11, Yangcun 5 Dist Jinhua, Zhejiang China 321000.

26.     ATVOXIS imports, sells and offers for sale a consumer series of outline trimmers that feature a "Zero Gap T-Blade" in the United States.  ATVOXIS imports and sells such ATVOXIS

Zero Gap Products having the "Zero Gap T-Blade" feature of the '017 Patent in this judicial district.

27. Additionally, this Court has personal jurisdiction over ATVOXIS since ATVOXIS has purposefully availed itself of the privilege of conducting activities within the state of Illinois and has contacts with the state of Illinois sufficient to give rise to, or are related to, the claim of infringement through the sale and advertisement of the ATVOXIS Zero Gap Products in this judicial district.

28. ATVOXIS imports, sells, and offers for sale the ATVOXIS Zero Gap Products in this judicial district. ATVOXIS is subject to personal jurisdiction of this Court because, among other things, it has established sufficient contacts with Illinois and within this judicial district.

29. ATVOXIS has committed acts of patent infringement within Illinois giving rise to this action. ATVOXIS has sufficient contact with the forum meeting or exceeding the minimum threshold such that the exercise of jurisdiction over it would not offend traditional notions of fair play and substantial justice.

30. Alternatively, if any foreign defendant is found not to be subject to personal jurisdiction in the courts of any individual state, including Illinois, then this Court has personal jurisdiction over such defendant pursuant to Fed. R. Civ. P. 4(k)(2).

31. Each such foreign defendant has purposefully directed activities toward the United States as a whole, including manufacturing accused products for the United States market, exporting those products to the United States, selling or offering them for sale through United States-based online platforms, and deriving substantial revenue from United States sales.

32. Exercising jurisdiction pursuant to 4(k)(2) is consistent with the United States Constitution and laws and does not offend traditional notions of fair play and substantial justice.

33. Venue is proper in this judicial district under 28 U.S.C. § 1391(b) and 1400(b). Venue is proper under 28 U.S.C. § 1391(c) as "a defendant not resident in the United States may be sued in any judicial district."

34. Defendants in this lawsuit may be properly joined under Fed. R. Civ. P. 20 and 42(a) because the right to relief asserted against Defendants arise out of the same transaction, occurrence, or series of transactions or occurrences relating to the making, using, importing into the United States, offering for sale, or selling of the same or similar accused products; and questions of fact common to all Defendants will arise in the action.

## THE CONAIR PATENT

35. United States Patent No. 11,104,017 is titled "Hair Cutter Blade Gap Adjustment System" and was issued on August 31, 2021.

36. The Conair Patent relates to a hair cutter system with blade adjustment mechanism for adjusting the relative gap between blades to adjust the cutting length of the hair. ('017 Patent Col. 1:7-11). The invention uses a driver tool to adjust the alignment of the blades.

37. The Conair '017 Patent describes the benefit of the gap adjustment system in the Summary of the Invention:

> The releasable lock includes at least one alignment fastener coupled to the movable blade, and configured to releasably secure the movable blade at a plurality of select longitudinal positions. The alignment fastener may include an alignment screw.
>
>    ***
>
> The adjustment tool includes a driver releasably mounted thereto, which is manipulatable to control movement of the alignment screw. One or more alignment screws may be provided. The one or more alignment screws are accessible to the driver with the cutting assembly mounted to the strut.

('017 Patent, col. 2:17-33).

38.    FIG. 15 is a perspective view which illustrates "an exemplary method of use of the adjustment tool in adjusting the spacings of the blades of the cutting blade assembly." (*Id.* at col. 3:21-23):



U.S. Patent          Aug. 31, 2021          Sheet 11 of 12          US 11,104,017 B2

FIG. 15

39.    The disclosure of the '017 Patent describes the use of the driver to position the alignment screws without the need to remove the cutting blade from the handle:

> The driver **38** is utilized to loosen both alignment screws **84**. It is noted that the presence of the strut **46** displaces the alignment screws **84** a sufficient distance from the handle **16** such that the operator can readily access the alignment screws **84** with the driver **38** without the need to first remove the blade assembly **18** from the handle **16**. Thereafter, the adjustment tool **14**, if previously removed, is positioned onto the cutting blade assembly **18** with the cutting blade assembly **18** being at least partially received within the spacing **28** of the adjustment tool **14** (FIG. 16).

(*Id.* at col. 15:2-11).

40.    The embodiment of FIG. 16 shows the recess for the alignment screw and how the operator can readily access the alignment screw without the need to remove the blade from the handle:

8



**FIG. 16**

(*Id.* at Sheet 11).

41.     The advantages of the adjustability of the gap ("g1") in the blades is also shown in FIG.

16, as well as described in the preferred embodiments:

> To selectively close the gap between the blade edges **70** *a*, **88** *a* of the cutting teeth **70**, **88**, the adjustment tool **14** is advanced upwardly in the longitudinal direction of the directional arrows "m" of FIGS. 16 and 18 such that the upper surfaces **27** of the adjustment tool **14** and the lower surface **58** *a* of the movable blade **58** cause the movable blade **58** to move upwardly closing the gap between the outer blade edges **70** *a*, **88** *a* of the movable blade **58** and the stationary blade **62**.
>
> The alignment screws **84** may be tightened at any time to secure the relative positions of the movable blade **58** and the stationary blade **62**. It is to be appreciated that the movable blade **58** may be adjusted to a plurality of select positions relative to the stationary blade **62** between the fully displaced condition and the approximated condition and the adjustment screws **84** to selectively adjust the length of cut as desired.

(*Id.* at col. 6:24-51).

42.     FIGS. 17 and 18 of the '017 Patent depict the difference between the gaps in the blade as

shown in "g1" and "g2" as the movable blade is adjusted using the adjustment screws:

9



U.S. Patent    Aug. 31, 2021    Sheet 12 of 12    US 11,104,017 B2

FIG. 17

FIG. 18

43.    The adjustable gap feature is claimed in the Conair Patent. Claim 15 of the '017 Patent recites:

> 15. A hair cutting system, which comprises:
>
> a handle defining a longitudinal axis, the handle including a rotating shaft;
>
> a hair cutting blade assembly including:
>
> a fixed strut configured for securement to the handle and extend outwardly therefrom;
>
> a stationary blade defining cutting teeth having blade edges, the stationary blade secured to the strut;
>
> a movable blade coupled to the rotating shaft of the handle, the movable blade defining cutting teeth having blade edges and capable of reciprocal movement relative to the stationary blade in a direction transverse to the longitudinal axis defined by the handle in response to rotation of the rotating shaft, the movable blade and the stationary blade being movable relative to each other in a direction relative to the longitudinal axis defined by the handle to selectively adjust a position of the

movable blade relative to the stationary blade to selectively vary a distance between the blade edges of the stationary blade and the blade edges of the movable blade; and

one or more alignment fasteners to releasably secure the movable blade at a plurality of select positions relative to the stationary blade;

wherein the strut is configured to space the cutting blade assembly relative to the handle along the longitudinal axis to facilitate access to the one or more fasteners without requiring removal of the cutting blade assembly from the handle.

### <u>FIRST COUNT FOR PATENT INFRINGEMENT AGAINST KEMEI</u>
**(Infringement of U.S. Patent No. 11,104,017)**

### <u>Infringement</u>

44.     The Kemei Zero Gap Products literally and directly infringe at least Claims 15, 16, 17, 18 and 19 of the '017 Patent in violation of 35 U.S.C. § 271(a).

45.     The Kemei Zero Gap Products include a handle defining a longitudinal axis, the handle including a rotating shaft:

 

46.     The Kemei Zero Gap Products include a hair blade assembly:

11

A hair cutting blade assembly including



hair cutting bade assembly

47.     The Kemei Zero Gap Products include a fixed strut that is configured to be secured to the handle and extend outwardly therefrom:

a fixed strut configured for securement to the handle and extend outwardly therefrom



A fixed strut

12

48.     The Kemei Zero Gap Products include a stationary blade defining cutting teeth having blade edges, the stationary blade secured to the strut:



49.     The Kemei Zero Gap Products include a movable blade coupled to the rotating shaft of the handle, the movable blade defining cutting teeth having blade edges and capable of reciprocal movement relative to the stationary blade in a direction transverse to the longitudinal axis defined by the handle in response to rotation of the rotating shaft:



50.     The Kemei Zero Gap Products include a movable blade and a stationary blade being movable relative to each to selectively adjust a position of the movable blade relative to the

stationary blade to selectively vary a distance between the blade edges of the stationary blade and

the blade edges of the movable blade:



51.     The Kemei Zero Gap Products include one or more alignment fasteners to releasably secure

the movable blade at a plurality of select positions relative to the stationary blade:



52.     The Kemei Zero Gap Products include a strut that is configured to space the cutting blade

assembly relative to the handle along the longitudinal axis to facilitate access to the one or more

fasteners without requiring removal of the cutting blade assembly from the handle:





53.     The Kemei Zero Gap Products satisfy each and every element of Claim 15 of the '017 Patent and therefore directly and literally infringe Claim 15 of the '017 Patent.

54.     The Kemei Zero Gap Products further literally and directly infringe at least Claims 16, 17, 18 and 19 of the '017 Patent in violation of 35 U.S.C. § 271(a).

55.     The Kemei Zero Gap Products satisfy each and every element of Claims 16, 17, 18 and 19 of the '017 Patent and therefore directly and literally infringe Claims 16, 17, 18 and 19 of the '017 Patent.

56.     If any of the claim elements of the asserted claims of the '017 Patent are not found in the Kemei Zero Gap Products, there is infringement under the doctrine of equivalents.

### **Damages**

57.     Kemei's actions of infringement of the '017 Patent have injured Conair and Conair is entitled to recover damages to compensate them for such infringement, but in no event less than a reasonable royalty as established under 35 U.S.C. § 284.

58. Kemei's deliberate, intentional, and willful infringement of one or more claims of the '017 Patent after having knowledge of the '017 Patent entitles Conair to enhanced damages under 35 U.S.C. § 284.

59. Plaintiff's injury will continue unless or until this Court enters an injunction against further infringement by Kemei.

60. Plaintiff has complied with any applicable provisions of 35 U.S.C. § 287 by marking products sold by Plaintiff that embody the invention covered by the '017 Patent.

## SECOND COUNT FOR PATENT INFRINGEMENT AGAINST ATVOXIS
### (Infringement of U.S. Patent No. 11,104,017)

### Infringement

61. The ATVOXIS Zero Gap Products, including but not limited to the ATVOXIS Professional Hair/Beard Trimmer, the Baldheaded Hair Clippers for Men Professional Cordless Hair Trimmer Beard Trimmer with T Blade Zero Gapped Rechargeable Grooming Kit having a "Zero Gap T-Blade," literally and directly infringe at least Claims 15, 16, 17, 18 and 19 of the '017 Patent in violation of 35 U.S.C. § 271(a).

62. The ATVOXIS Zero Gap Products include a handle defining a longitudinal axis, the handle including a rotating shaft:




16

63.     The ATVOXIS Zero Gap Products include a hair blade assembly:



64.     The ATVOXIS Zero Gap Products include a fixed strut that is configured for securement to the handle and to extend outwardly therefrom:



65.     The ATVOXIS Zero Gap Products include a stationary blade defining cutting teeth having blade edges, the stationary blade secured to the strut:

17



66.     The ATVOXIS Zero Gap Products include a movable blade coupled to the rotating shaft of the handle, the movable blade defining cutting teeth having blade edges and capable of reciprocal movement relative to the stationary blade in a direction transverse to the longitudinal axis defined by the handle in response to rotation of the rotating shaft:



67.     The ATVOXIS Zero Gap Products include a movable blade and a stationary blade being movable relative to each other in a direction relative to the longitudinal axis defined by the handle to selectively adjust a position of the movable blade relative to the stationary blade to selectively

vary a distance between the blade edges of the stationary blade and the blade edges of the movable blade:



68.     The ATVOXIS Zero Gap Products include one or more alignment fasteners to releasably secure the movable blade at a plurality of select positions relative to the stationary blade:



19

69.     The ATVOXIS Zero Gap Products include a strut that is configured to space the cutting blade assembly relative to the handle along the longitudinal axis to facilitate access to the one or more fasteners without requiring removal of the cutting blade assembly from the handle:



70.     The ATVOXIS Zero Gap Products satisfy each and every element of Claim 15 of the '017 Patent and therefore directly and literally infringe Claim 15 of the '017 Patent.

71.     The ATVOXIS Zero Gap Products further literally and directly infringe at least Claims 16, 17, 18 and 19 of the '017 Patent in violation of 35 U.S.C. § 271(a).

72.     The ATVOXIS Zero Gap Products satisfy each and every element of Claims 16, 17, 18 and 19 of the '017 Patent and therefore directly and literally infringe Claims 16, 17, 18 and 19 of the '017 Patent.

73.     If any of the claim elements of the asserted claims of the '017 Patent are not found in the ATVOXIS Zero Gap Products, there is infringement under the doctrine of equivalents.

20

**Damages**

74.     ATVOXIS's actions of infringement of the '017 Patent have injured Conair and Conair is entitled to recover damages to compensate them for such infringement, but in no event less than a reasonable royalty as established under 35 U.S.C. § 284.

75.     ATVOXIS's deliberate, intentional, and willful infringement of one or more claims of the '017 Patent after having knowledge of the '017 Patent entitles Conair to enhanced damages under 35 U.S.C. § 284.

76.     Plaintiff's injury will continue unless or until this Court enters an injunction against further infringement by ATVOXIS.

77.     Plaintiff is complying with any applicable provisions of 35 U.S.C. § 287 by marking its products covered by the '017 Patent.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, Conair, prays for the following relief:

a.     A judgment finding that Kemei and ATVOXIS have infringed the asserted claims of the '017 Patent under 35 U.S.C. § 271(a) as pled above;

b.     A judgment that the '017 Patent is valid and enforceable;

c.     A permanent injunction enjoining Kemei and ATVOXIS, their agents, officers, assigns and others acting in concert with them, from infringing the '017 Patent;

d.     An award of damages adequate to compensate Conair for the infringement of the '017 Patent that has occurred;

e.     An award of pre-judgment interest and post-judgment interest on the damages awarded;

f.      A judgment that Conair is entitled to an award of enhanced damages under 35 U.S.C. § 284 to be increased at the discretion of the trial court up to three times the damages found;

g.      A determination that this is an exceptional case and an award of Plaintiff's attorneys' fees  pursuant to 35 U.S.C. § 285 and any other applicable statute or law, and an award to Conair of its fees and costs; and

h.      Such other further relief as the Court deems reasonable.

## JURY DEMAND

Conair demands a trial by jury on all issues so triable to a jury.

Dated: May 4, 2026

Respectfully submitted,

/s/      *Dean D. Niro*

Dean D. Niro (dniro@vvnlaw.com)
Nicholas D. Niro (nniro@vvnlaw.com)
Vitale, Vickrey, Niro, Solon & Gasey LLP
311 S. Wacker Drive, Suite 2200
Chicago, IL 60606
(312) 236-0733

***Attorneys for Plaintiff Conair LLC***

22